CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 0 6 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN R. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:05CV00064 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| PILGRIM'S PRIDE CORPORATION, ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | United States District Judge |

Plaintiff John R. Miller brought this action against Pilgrim's Pride Corporation ("Pilgrim's Pride"), pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. The plaintiff alleges that his employment was terminated by the defendant in violation of the ADA and FMLA. The case is currently before the court on the defendant's motion for summary judgment. For the reasons stated in this memorandum opinion, the court will grant in part and deny in part the defendant's motion for summary judgment.

## BACKGROUND

This case arises out of the termination of the employment of the plaintiff, John R. Miller. Miller was an employee of Pilgrim's Pride, working as a maintenance manager of the facility in Broadway, Virginia. Miller began in this position on July 15, 2002. As the maintenance manager, he was responsible for overseeing plant maintenance, which involved a fifty-person staff, and analyzing and addressing technical aspects of plant equipment and functioning.

In November of 2003, Pilgrim's Pride acquired the poultry division of ConAgra Foods ("ConAgra"). Certain managers from ConAgra transferred to the Broadway Pilgrim's Pride plant, including Ted Lankford. At Pilgrim's Pride, Lankford served as plant manager. Miller

had worked for ConAgra from October 2000 to December 2001, and alleges that Pilgrim's Pride learned of his health conditions in 2003, due to the acquisition of the ConAgra division and personnel.

On February 11, 2004, Miller began a medical leave of absence that lasted through March 15, 2004. Miller met with Lankford upon his return, receiving a list of ten areas in which he needed to improve. Miller was also given a list of specific goals on July 15, 2004. Miller was absent from work on July 27, due to a hospital visit resulting from chest pains. On August 2, 2004, Miller was terminated by Pilgrim's Pride.

At the time of the plaintiff's employment with Pilgrim's Pride, Brandy Barb was the regional human resource manager of Pilgrim's Pride. On October 10, 2006, the plaintiff took her deposition during preparation of this case. The deposition included questions about her education and business experience. Subsequently, Barb issued two errata sheets as to the deposition transcript. These sheets attempted to change details about Barb's educational, criminal, and work circumstances. Barb was terminated by Pilgrim's Pride in December of 2006. On March 9, 2007, this court issued an order providing that the plaintiff could re-depose Barb and that Barb could be called as a witness at trial. See Order, Miller v. Pilgrim's Pride Corp, No. 5:05CV00064 (W.D. Va. Mar. 9, 2007).

On April 23, 2007, Pilgrim's Pride filed a motion for summary judgment. The plaintiff responded, and a hearing was held on May 24, 2007.

## **STANDARD OF REVIEW**

The case is presently before the court on the defendant's motion for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if

2

"there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted by the court, "only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ...." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (internal quotations omitted).

In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). Furthermore, the court must draw any permissible inference from the facts in the light most favorable to the non-moving party. Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992) (internal citation omitted).

## DISCUSSION

I.  Count One: Violations of the ADA

The ADA provides that it is unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Therefore, to establish a prima facie case, the plaintiff must show that: "(1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged solely because of his disability." Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997).

Pilgrim's Pride argues that the plaintiff's ADA claims cannot go forward because the plaintiff cannot show that he was a qualified individual with a disability within the meaning of the ADA. In addition, the defendant contends that Miller was not qualified for his position as maintenance manager. Finally, the defendant claims that summary judgment must be granted

3

because the plaintiff has not made out a prima facie case of discrimination, and has not rebutted the defendant's legitimate reason for termination.

### A. Disability

A disability under the ADA is described as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A finding of disability must be made on a case-by-case basis. Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 60 (4th Cir. 1995).

The plaintiff claims that he fits within all three categories of disability described under the ADA. First, the plaintiff claims that he had physical and mental impairments that substantially limited one or more major life activities, and a record of such impairments. The implementing regulations of the ADA describe "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In his complaint, the plaintiff relied on the following health conditions to claim that he was a disabled individual:

> Plaintiff suffered from severe pain in his back, had recurring and continuing occlusions resulting from his coronary artery disease which caused or were related to serious symptoms of angina, shortness of breath, dizziness, anxiety and depression. The major life activities substantially limited by Plaintiff's impairments, and/or which the Defendant Company so regarded him as having, during his employment include the major life activities of working, climbing, walking, standing, lifting and Plaintiff's coronary artery disease substantially impaired Plaintiff's blood flow to his heart and the circulation of blood through his body, a major life activity.

4

Compl. ¶ 29. These contentions are supported by the defendant's own expert, Dr. Robert S. Brown. After reviewing medical records and depositions and evaluating the plaintiff, Brown testified that Miller's impairments met the requirements of a disability under the ADA. Specifically, Dr. Brown testified that Miller was impaired in the life activity of walking, because some days he would have chest pain after walking a short distance. Robert S. Brown, Jr., M.D., Dep. 55, Apr. 4, 2007. Brown also noted that the plaintiff had significant mental impairments. Id. at 56. In his report, Brown described the plaintiff's "severe physical and mental impairments," including observations about Miller's panic attacks. Robert S. Brown, Jr., M.D., Rep. 61, Dec. 1, 2006. He described that "[a]nyone reading the medical summary found within this report will be struck with the degree to which Mr. Miller suffered from recurrent bouts of chest pain .... [t]he course of his coronary artery disease has been remarkable in the number of cardiac catheterizations and interventions that he has required over the years, with minimal success." Id. at 60. Brown also observed that Miller's mental and physical impairments "acted together to produce severe functional limitations concerning Mr. Miller's ability to concentrate and to avoid distraction. Evidence suggests that he had difficulty interacting with others .... and had difficulty focusing on multiple tasks." Id. at 61. Therefore, the court concludes that the plaintiff was clearly substantially limited as to a major life activity, and had a record of such disability, and was disabled as a matter of law under the first and second categories described

above.[1]  As a result of this conclusion, it is unnecessary for the court to reach the issue of whether the plaintiff was regarded by Pilgrim's Pride as having such a disability.

B.    Qualification for the Job

The ADA describes a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 212-13 (4th Cir. 1994). This means that a qualified person "must be able to meet all of a program's requirements in spite of his handicap." Tyndall, 31 F.3d at 213 (citing Se. Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979)). Therefore, in order to decide whether a plaintiff is qualified for his position, the court must determine: (1) whether he could perform the essential functions of the job; and (2) if he cannot, whether reasonable accommodation by the employer would enable such performance. Id.

The court concludes that there are issues of material fact as to whether Miller was a "qualified individual" under the ADA. The defendant contends that the plaintiff could not perform the essential functions of his job, either with or without accommodations. In support, Pilgrim's Pride relies on the "overall dissatisfaction" expressed with the plaintiff's work.

---

[1]The court notes, however, that the plaintiff was not disabled as a matter of law as to the major life activity of working. In his deposition, the plaintiff testified about the impact of his health on his ability to fulfill the obligations of his job:

> I was able to fulfill the obligations of my job the whole time I was there. I always somehow would get the job done. Even when they gave me the set of goals that they used to fired me for, I was well on my way to meeting those goals and they fired me short of the time they allowed me to complete them.

John Robert Miller Dep. 119, Nov. 15, 2006. Therefore, by the plaintiff's own testimony, he was not disabled as to this particular major life activity.

Although the court agrees that there is evidence to support the argument that there were problems with the plaintiff's work, the court concludes that material issues of fact preclude summary judgment on this basis.

In addition to the plaintiff's own testimony about his positive job performance, the plaintiff adduced other evidence in support of the proposition that he could perform the essential functions of his job. For instance, Lankford testified that the plaintiff successfully headed up the completion of two of the food craft debone lines, that were converted into bone lines. Ted Lankford Dep. 181, Oct. 6, 2006. Lankford also testified that Miller worked to put in a new salvage line. Id. Although the line required later changes, it was better than it had been before the work. Id. at 182. In addition, a declaration by Jeff Ritchie supports the statements made by Miller about his performance. Ritchie was a maintenance supervisor working under Miller, who acted as maintenance manager after Miller's departure. Jeff Ritchie Decl. ¶ 4, May 17, 2007. Ritchie stated that Miller was a good maintenance manager, and was strong in planning projects and finding solutions. Id. at ¶ 5. Ritchie also noted Miller faced constraints based upon the old equipment at the plant. Id. Ritchie stated that some of the problems in the maintenance department were repaired after Miller was terminated, such as the "double dipping" method of counting downtime against the maintenance department and the understaffing of the maintenance department. Id. at ¶ 7, ¶ 8. Ritchie also testified that Miller was "instrumental" in working to increase the number of gallons of water captured from chicken processing. Id. at ¶ 9. According to Ritchie, Miller's work orders were substantially completed up to the time of his termination. Id. at ¶ 10. Furthermore, Ritchie testified that he was aware of the goals that had been imposed upon Miller prior to his termination, and that Miller's plans for the goals were "coming together"

before his termination. Id. at ¶ 13. Viewing this evidence, and other similar evidence presented by the plaintiff, in the light most favorable to the plaintiff and drawing all reasonable inferences in the plaintiff's favor, the court concludes that there are material issues of fact on whether the plaintiff was a "qualified individual" for the purposes of the ADA.

The second way that a plaintiff can show that he is a qualified individual is by showing that reasonable accommodation by his employer would enable performance of the essential job functions. However, to the extent that Miller claims that the defendant failed to reasonably accommodate his known disabilities, the court concludes that these arguments are meritless. See Compl. ¶ 19, ¶ 32. Because there is no evidence that the plaintiff requested such accommodations, and because the accommodations referred to by the plaintiff were inappropriate, the court concludes that this is not a case where the defendant failed to reasonably accommodate the plaintiff's known disabilities. Therefore, this particular issue cannot go forward to the jury.

One of the assertions made by the plaintiff is that he could have been accommodated by part-time work. See Compl. ¶ 17 ("Plaintiff's psychiatrist recommended that Plaintiff be allowed to return to work on a part time basis to build up strength for his return to work."), ¶ 19. However, the plaintiff himself admits that he was not under actual restriction when his physician, Dr. Conell, released him to return to work on March 15, 2004. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 10, 28. Furthermore, there is no evidence that the plaintiff presented the restriction that he work part-time to the defendant. See Huppenbauer v. The May Dep't Stores Co., 99 F.3d 1130 (4th Cir. 1996) (unpublished table decision) (holding that an employer cannot

8

be liable for failing to make an accommodation when an employee failed to make a "clear request" for an accommodation to his employer).

The plaintiff also claims that he was required "to work 7 days a week despite his health condition." Compl. ¶ 19. To the extent that this could be construed as a claim that the defendant failed to accommodate the plaintiff's disability by reducing the number of days he had to work, the court finds that it is insufficient. The United States Court of Appeals for the Fourth Circuit has held that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." Tyndall, 31 F.3d at 213. Miller held a job that required him to sometimes be present at the plant six or seven days a week. See, e.g., Lankford Dep. at 131-32; Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 38. In light of the job requirements of Miller's position, the court concludes that accommodation allowing Miller to work part time would be unreasonable. Therefore, to the extent that the plaintiff would rely on this attendance requirement as proof that the defendant failed to reasonably accommodate his disability, the court concludes that summary judgment as to the defendant's failure to reasonably accommodate the plaintiff must be granted.

C. Reason for Discharge

The Fourth Circuit has allowed for two alternative proof schemes for unlawful termination claims under the ADA. Shiflett v. GE Fanuc Automation Corp., 960 F. Supp. 1022, 1028 (4th Cir. 1997). The first applies when an employer admits that the employee's disability played a role in the discharge. Id. (citing the organizational framework of Tyndall, 31 F.3d at 212). The second applies when the employer claims that the discharge was not related to the

alleged disability. Id. As the court concludes that Pilgrim's Pride denies that the discharge was based on Miller's disability, the second scheme is applicable in this case.

In a case where the employer denies that a discharge is based on the employee's disability, the court must use a burden-shifting method of proof like that set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The specific scheme set forth by the Fourth Circuit for use in an ADA case requires an employee to show: (1) that he is protected under the ADA; (2) that he was terminated; (3) that his job performance at the time of discharge met the legitimate expectations of his employer; and (4) that the circumstances under which the discharge occurred give rise to a reasonable inference of unlawful discrimination. Ennis, 53 F.3d at 58. Once an employee has made this prima facie case, the employer must adduce evidence of a legitimate and nondiscriminatory reason for the discharge. Id. The burden then shifts back to the employee to demonstrate that the reason given by the employer is pretextual. Id.

The court has already concluded that the plaintiff has established the first element of his prima facie case, and the parties do not contest that Miller was terminated from his job at Pilgrim's Pride, the second element. The court also concludes that evidence adduced by the plaintiff establishes a prima facie case as to elements three and four. As discussed above, evidence presented by the plaintiff goes to whether the plaintiff's job performance was meeting the expectations of his employer. Although the defendant has introduced evidence that the plaintiff's performance was unsatisfactory, viewing the evidence in the light most favorable to the plaintiff, there is some evidence that the plaintiff was performing in a way that would meet the defendant's _legitimate_ expectations. Jeff Ritchie, who was working under Miller at the time of Miller's discharge and subsequently replaced Miller as maintenance manager, testified that

Miller was meeting goals and that there were factors beyond Miller's control affecting some of the goals set by Miller's superiors. Furthermore, the objective evidence presented by Miller as to water use requirements support Miller's and Ritchie's statements about Miller's performance. See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. 31. Finally, the court notes that the plaintiff has faced obstacles in obtaining testimony from defendant's former human resources manager, Brandy Barb.

The circumstances of the plaintiff's discharge also give rise to a reasonable inference of unlawful discrimination. Specifically, several witnesses have stated that the management had commented on the impact of Miller's various disabilities. For example, Ritchie stated that "I recall Ted Lankford making comments about Toby's health, saying words to the effect Toby was not in great health. Mr. Lankford indicated that Toby was missing too much work due to his health, including for doctor's appointments." Ritchie Decl. ¶ 6. Based on this evidence and other evidence presented by the plaintiff, the court concludes that the plaintiff has presented sufficient evidence to establish a prima facie case of discrimination under the ADA.

II.     Count Two: ADA Retaliation and Interference

The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The plaintiff must offer direct or indirect evidence of retaliation, or use the burden-shifting method of proof. Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 391 (4th Cir. 2001). The plaintiff claims that Pilgrim's Pride discriminated

11

against him and retaliated against him because he opposed conduct of the defendant made unlawful by the ADA.

As to Count II, the court concludes that there is virtually no evidence that the defendant terminated Miller in retaliation for the plaintiff's attempt to assert his rights under the ADA.[2] Therefore, Count II of the complaint will be dismissed.

III.     Count Three: Violation of the FMLA

The FMLA allows an eligible employee as many as 12 weeks of unpaid leave per year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is a physical or mental condition that involves inpatient care or continuing treatment by a healthcare provider. 29 U.S.C. § 2611(11). Conduct by an employer which discriminates or retaliates based upon an employee's use of FMLA leave is prohibited. 29 U.S.C. § 2615.

The FMLA provides two types of protection to employees. See Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006). First, an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided ..." 29 U.S.C. § 2615(a)(1). Second, the FMLA protects an employee from retaliation, stating "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this [subchapter] ..." 29 U.S.C. § 2615(a)(2).

---

[2]To the extent that this result may appear inconsistent with the court's treatment of the plaintiff's FMLA claim, the court concludes that this is not the case. The plaintiff clearly alleges that, in dealing with the defendant, he attempted to invoke his rights under the FMLA. However, there is absolutely no evidence that the plaintiff attempted to assert his rights under the ADA at any time during his employment.

12

The court first notes that, to the extent that the plaintiff's FMLA claims are based on the premise that he should have been allowed to return to part-time work, these claims must be denied. The implementing regulations of the FMLA provide that "[t]he treatment regimen and other information described in the certification of a serious health condition ... meets the requirement for certification of the medical necessity of intermittent leave or leave on a reduced leave schedule." 29 C.F.R. § 825.117. The referenced regulation provides that a form containing a "required" entry as to "[w]hether it will be necessary for the employee to take leave intermittently or to work on a reduced leave schedule basis ...." should be required in a medical certification. 29 C.F.R. § 825.306 (b)(2)(ii).

As discussed above, the plaintiff did not present evidence that he was released to part-time work. One certification submitted by the plaintiff stated that the plaintiff had to be off work from February 9, 2004 through February 27, 2004. Mem. in Supp. of Mot. for Summ. J., Ex. Q. The portion of the form asking if the employee could work on less than a full schedule was left blank. Id. The letter submitted on February 26, 2004 by Dr. Lawrence Conell, a treating physician, stated that the plaintiff "will need to remain off work at least until 3/15/04." Mem. in Supp. of Mot. for Summ. J., Ex. R. On another health care certification, dated March 8, 2004, the doctor stated that Miller could possibly return to work on March 15. Mem. in Supp. of Mot. for Summ. J., Ex. S. In answering whether Miller would have to return with less than a full schedule, the physician noted "not sure yet." Id. During his deposition, Conell noted that he discussed with Miller on March 10 the possibility of returning to work part time, but did not write a separate note. Lawrence Conell, M.D., Dep. 36, Mar. 14, 2007. Even the plaintiff himself admits that he was not under restriction when Conell released him to return to work on

13

March 15, 2004. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 10, 28. Therefore, the court must grant the defendant's motion for summary judgment as to the plaintiff's claims relating to Pilgrim's Pride's refusal to allow him to return to work part-time.

In terms of the plaintiff's interference claim, he contends that the list of goals set forth by Lankford after his return from FMLA leave did not restore him to the same or an equivalent position. Specifically, the plaintiff contends that he was faced with unreasonable demands. The statute provides that an employee taking FMLA leave "shall be entitled, on return from such leave–(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a)(1). It is a question of fact as to whether the plaintiff was returned to a position with the same duties, and the court therefore concludes that the plaintiff has presented sufficient evidence about the position to which he returned so that this issue must be resolved at trial.

As to the plaintiff's remaining FMLA retaliation claim, the court also concludes that there are sufficient issues of material fact such that the defendant's motion for summary judgment must be denied. To establish a claim of retaliation, a plaintiff must establish a prima facie case "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). The defendant must then offer a non-discriminatory explanation for the termination, and the plaintiff then bears the burden of establishing that the employer's explanation is pretextual. Yashenko, 446 F.3d at 551. First, the court notes that the evidence clearly shows that Miller suffered from a serious health condition.

14

The plaintiff also engaged in a protected activity, by taking FMLA leave, and was subsequently terminated. The court also concludes that the plaintiff established a prima facie case as to the defendant's treatment of the plaintiff's FMLA leave. In addition to the issues discussed above in regard to the plaintiff's ADA claim, the court has identified several other factors which support the plaintiff's retaliation claim. First, the temporal proximity of Miller's absence and his termination help to establish a prima facie case. See Yashenko, 446 F.3d at 551 ("[w]hile evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality"). Second, the plaintiff has adduced evidence about concern of management over his absences. For example, Lankford was questioned in his deposition about an email exchange with Brandy Barb. Lankford wrote an email to Barb on February 21, 2004, during Miller's first absence: "[t]his week we have lost in 1st processing around 195 minutes due to maintenance issues. This is around 40,000 chickens that we could have processed but did not. I believe that this is a direct result of the maintenance manager Toby Miller being absent from his post .... Toby has not been here to participate in any of the design meetings [to change the flow of 2nd processing]." Lankford Dep., Ex. Barb responded "Toby has demonstrated for reasons [sic] that he is unable to manage his department or provide the leadership it needs. We have the ability, and need to make some decisions concerning his continued employment .... I will follow up on his FMLA certification today as well." Id. The court also notes that the plaintiff has faced obstacles in obtaining other evidence about his FMLA claims due to the relative unavailability of Barb. The court concludes that the plaintiff has established a prima facie case of retaliation under the FMLA, and has adduced sufficient evidence to create an issue of fact as to the

15

defendant's proffered legitimate reasons for his termination. The defendant's motion for summary judgment on this issue will therefore be denied.

IV. Front and Back Pay

On August 16, 2005, the plaintiff was awarded Social Security benefits. The defendant has moved for partial summary judgment, claiming that this award forecloses the plaintiff from receiving back pay or front pay after the date of the award.

The court concludes that the defendant's motion for partial summary judgment as to back pay must be granted. The Social Security Act provides benefits to persons "under a disability," defining disability as an "inability to engage in any substantial gainful activity by reason of any ... physical or mental impairment ...." 42 U.S.C. § 423(d)(1)(A) (cited in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 801 (1999)). Furthermore, the Act describes the impairment as being "of such severity that [an individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (cited in Cleveland, 526 U.S. at 801). Because the plaintiff qualified as an individual under a disability for the purposes of the Social Security award, the court concludes that an award of back pay, or lost earnings, would be inconsistent, as the plaintiff would have been unable to engage in "substantial gainful work" as of August 16, 2005. See Flowers v. Komatsu Mining Sys., Inc., 165 F.3d 554, 557-58 (7th Cir. 1999) (concluding that the court must consider the ability of the plaintiff to work, including his qualification for receipt of Social Security benefits, in deciding when the plaintiff would be entitled to back pay).

16

As to the issue of front pay, the court takes the matter under advisement for determination at trial. Because front pay is an equitable remedy, as a substitution for reinstatement, determination of this type of damages is within the discretion of the court, and will be determined at trial. Cf. Cline, 144 F.3d at 307 (holding that front pay is an equitable remedy to be determined by the judge, in the context of FMLA, relying on the reasoning of Duke v. Uniroyal, 928 F2d. 1413, 1424 (4th Cir. 1991), an Age Discrimination in Employment Act case).

## CONCLUSION

For the reasons stated above, the court concludes that the defendant's motion for summary judgment should be granted in part and denied in part.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of July, 2007.

_____
United States District Judge