IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 31 2007
JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

| | |
|---|---|
| JOHN R. MILLER, | ) |
| Plaintiff, | ) Civil Action No. 5:05CV00064 |
| v. | ) **MEMORANDUM OPINION** |
| PILGRIM'S PRIDE CORPORATION, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) United States District Judge |

This case is before the court on the petition of plaintiff John R. Miller ("Miller") for monetary relief, declaratory relief, injunctive relief, and attorney's fees and costs pursuant to the jury's verdict reached after a trial on his claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"). For the reasons set forth below, the court will deny Miller's request for monetary relief and grant in part his requests for declaratory relief, injunctive relief and attorney's fees and costs.

## BACKGROUND

This case is an employment discrimination suit brought by Miller for violations of the ADA and FMLA, arising out of alleged discriminatory, retaliatory, and harassing conduct by defendant Pilgrim's Pride Corporation ("Pilgrim's Pride") during Miller's employment. In his complaint filed on September 27, 2005, Miller asserted several claims under the ADA (harassment, failure to accommodate, discriminatory discharge, and retaliation) as well as two claims under the FMLA (interference with rights and retaliation). After Pilgrim's Pride filed a motion for summary judgment, the court granted the motion in part and dismissed Miller's ADA

claims for failure to accommodate and retaliation. The remaining claims proceeded to trial which took place on July 16-20, 2007. The court dismissed the claim for harassment under the ADA at the close of the plaintiff's evidence pursuant to the defendant's motion for judgment as a matter of law.

The jury was left with three claims to consider: (1) a claim for discriminatory discharge under the ADA, (2) a claim for interference with rights under the FMLA, and (3) a claim for retaliation under the FMLA. In its verdict rendered on July 20, 2007, the jury found in favor of the defendant on the FMLA interference claim. The jury found in favor of Miller on the FMLA retaliation claim and the discriminatory discharge claim under the ADA. With regard to both of these claims, however, the jury also found that Pilgrim's Pride proved by a preponderance of the evidence that it would have made the same decision to discharge Miller regardless of his exercise of his FMLA rights or his disability, respectively. The issue now before the court is the proper measure of relief for Miller, if any, given the jury's finding that Pilgrim's Pride would have made the same decision with regard to his discharge regardless of its illegal discrimination.

## DISCUSSION

I.      **Damages Available Under the FMLA**

Miller contends that, because the jury determined that Pilgrim's Pride violated the FMLA, he is entitled to the full panoply of damages available under the FMLA pursuant to 29 U.S.C. § 2617 which would include: past wage and benefit related damages, job loss in the future, the loss of use of income at the time it would have been received in the absence of discrimination, and injunctive relief to remedy the unlawful and pretextual statements included in his personnel files or distributed internally and to obtain protection from further retaliation under

the FMLA. Miller argues that these remedies are mandatory pursuant to the statute given the jury's finding that Pilgrim's Pride considered Miller's previous use of FMLA leave as a factor in its decision to terminate his employment.

Courts look to cases interpreting Title VII in determining the appropriate remedies available under the FMLA. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). In Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a Title VII case, the Supreme Court held that a finding that an employer would have made the same decision regarding an employee's position whether or not it considered impermissible factors operated as a complete defense to bar a recovery by the employee. Congress modified this rule by statute as follows:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(m). In such a case, however, a plaintiff may not receive monetary damages, but may obtain only declaratory and injunctive relief as well as attorney's fees and costs related to the claim, in the court's discretion. See 42 U.S.C. § 2000e-5(g)(2)(B).

The Fourth Circuit has held, however, that the provisions in 42 U.S.C. § 2000e-2(m) do not apply to claims of retaliation. Kuicko v. Ogden Logistics Svcs., 181 F.3d 544, 552-53 n. 7 & 8 (4th Cir. 1999) (holding that the mixed-motive proof scheme is available to a Title VII plaintiff to prove a retaliation claim, but that § 2000e-2(m) does not apply to retaliation claims). As a result, Price Waterhouse continues to apply, providing a complete defense to a defendant in a retaliation case given a "same decision" finding and preventing the plaintiff from obtaining any recovery. See also Funai v. Brownless, 369 F. Supp. 2d 1222, 1228 (D. Hawaii 2004) ("as

3

'unanimously' as courts have held that mixed-motive retaliation claims are actionable, they also held that Section 2000e-2(m) does not apply to retaliation claims"); Dehne v. Medicine Shoppe Intern., Inc., 261 F. Supp. 2d 1142, 1148 (E.D. Mo. 2003) (same); Kotewa v. Living Independence Network Corp., 2007 WL 433544, *8 (D. Idaho 2007) ("This Court agrees [] with the other circuits that the 'same decision' defense from Price Waterhouse applies to retaliation cases to provide a complete defense for employers, but is not a complete defense in Title VII cases under § 2000e-2(m) cases."); Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135 (3rd Cir. 2004) (granting summary judgment to the defendant in a retaliation case under the FMLA upon a finding that the defendant would have fired the plaintiff even in the absence of his exercise of rights under the FMLA); Thomas H. Barnard & George S. Crisci, "Mixed Motive" Discrimination Under the Civil Rights Act of 1991: Still a Pyrrhic Victory for Plaintiffs?, 51 Mercer L. Rev. 673, 674 (Winter 2000) ("Most courts, including every appellate court that has addressed the issue, have held that the 1991 Act does not overrule Price Waterhouse for retaliation cases. Thus, employees do not even get declaratory relief when they have been retaliated against, and the employer is completely exonerated from any liability.").

Miller has attempted to characterize his claim as an interference claim, however the court finds that argument to be without merit. The jury considered the second claim under the FMLA as one for retaliation. This is consistent with the evidence presented in the case and the jury's verdict. As such, the same decision finding by the jury operates to provide a complete defense to Pilgrim's Pride on this claim and is effectively a defendant's verdict. Because Miller is not entitled to any relief on his retaliation claim under the FMLA, his request for such relief, including attorney's fees and costs relating to that claim, will be denied.

II.    **Damages Available Under the ADA**

Although the jury determined that Pilgrim's Pride would have fired Miller regardless of its impermissible consideration of Miller's disability, it did in fact find that Pilgrim's Pride violated the ADA in that it terminated Miller because of his disability. As with the FMLA, courts apply the rules applicable to a Title VII claim to claims under the ADA. Rishel v. Nationwide Mut. Ins., 297 F. Supp. 2d 854, 861 (M.D.N.C. 2003). As discussed previously, a mixed motive/same decision finding under Price Waterhouse v. Hopkins, supra, does not operate as a complete defense when the charge is one of discriminatory discharge under the ADA. See 42 U.S.C. § 2000e-2(m). In such a case, however, a plaintiff may not receive monetary damages, but may obtain only declaratory and injunctive relief as well as attorney's fees and costs related to the claim, in the court's discretion.[1] See 42 U.S.C. § 2000e-5(g)(2)(B); Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999). Therefore, with regard to his ADA claim, the court, in its discretion, may award Miller his reasonable attorney's fees and costs along with possible injunctive and declaratory relief.

A.    Declaratory Relief

Miller seeks a declaratory judgment that Pilgrim's Pride's termination of his employment

---

[1] Specifically, the statue provides as follows:

> On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court -
> (i)     may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
> (ii)    shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e-5(g)(2)(B).

was because of his disability in violation of the ADA.  As the defendant notes, declaratory relief is left to the court's discretion pursuant to 42 U.S.C. § 2000e-5(g)(2)(B)(i).  Pilgrim's Pride contends that the court should decline to grant Miller's requested declaratory relief because there is no ongoing relationship between itself and Miller nor is there evidence of any widespread discrimination in Pilgrim's Pride's ongoing operations.  Therefore, the defendant argues, a declaratory judgment in this case would be without purpose.  See Richardson v. Tricom Pictures & Productions, Inc., 334 F. Supp. 2d 1303 (S.D. Fla. 2004) (holding declaratory relief was not justified where the Title VII plaintiff had no future connection to the defendant, would not be injured by the defendant in the future, and there was no evidence of ongoing workplace discrimination).

In the plaintiff's favor, however, several cases have granted simple declaratory judgments that a particular defendant discriminated against a particular plaintiff, even in a mixed motive case.  See, e.g., Dehne v. Medicine Shoppe Intern., Inc., 261 F. Supp. 2d 1142 (E.D. Mo. 2003) (granting declaratory relief in a same decision/mixed motive case to state that the defendant discriminated against the plaintiff because of his disability); Stevens v. Gravette Medical Center Hosp., 998 F. Supp. 1011, 1015 (W.D. Ark. 1998) (finding in a same decision Title VII case that the plaintiff was entitled to "a declaration that in connection with its treatment of Stevens defendant violated the provisions of Title VII.").

Miller is currently not working and is receiving Social Security disability benefits, however he has indicated a desire to return to work.  Although the court finds this possibility somewhat speculative, Miller is a relatively young individual and may be able to return to work

6

at some point in the future. In that case, the presence of a declaratory judgment in Miller's Pilgrim's Pride personnel file to the effect that he was discharged because of his disability in violation of the ADA may be of some value in his prospective search for employment. Therefore, the court will grant Miller's request for a declaration that he was terminated in violation of the ADA and will order such declaration placed in Miller's personnel file at Pilgrim's Pride.

B.      Injunctive Relief

While a court does have the discretion to award injunctive relief to a party who obtained a same decision verdict pursuant to 42 U.S.C. § 2000e-5(g)(2)(B)(i), the court must balance the following three factors to determine whether such relief is appropriate: (1) the threat of irreparable harm to the movant; (2) the harm to be suffered by the nonmoving party if the injunction is granted; and (3) the public interest at stake. Pathways Psychosocial v. Town of Leonardtown, MD, 223 F. Supp. 2d 699, 717 (D. Md. 2002). Typically, an injunction that simply orders the defendant to obey the law and not discriminate is impermissible. N.L.R.B. v. United States Postal Service, 486 F. 3d 683, 691 (10th Cir. 2007). In Hayes v. Shalala, 933 F. Supp. 21, 27 (D.D.C. 1996), the plaintiff in a racial discrimination case succeeded after a jury trial and was awarded $150,000. In that case, the court determined that "[a]n injunction prohibiting discrimination and retaliation in this case is both unnecessary and inappropriate" because the court would not presume that the defendant would not "follow the law and plaintiff has not demonstrated that future violations are likely." 933 F. Supp. at 27. The court did, however, order that the plaintiff's personnel records should be corrected to reflect the jury's verdict. Id.

With regard to his claims under the ADA, the plaintiff requests an order to (1) expunge all Pilgrim's Pride's personnel records regarding Miller of the negative personnel assessments and information related to the pretext relied upon by PPC at trial and (2) require that Pilgrim's Pride publish and distribute the judgment entered in this matter internally to all managers and supervisors at all Virginia, West Virginia, Alabama and Texas production facilities, together with (a) Pilgrim's Pride's anti-discrimination policy, (b) a written commitment not to discriminate against its employees with disabilities, and (c) information directing those Pilgrim's Pride employees of how to redress suspected disability discrimination. Miller contends that he would be irreparably harmed by the presence of damaging records in his personnel file and that his second request is necessary to ensure that Pilgrim's Pride and its managers do not engage in future discriminatory treatment of its employees.

The court has agreed to grant Miller's request for a declaration to be added to his personnel file to indicate that he was terminated because of his disability in violation of the ADA. The jury also determined, however, that Miller would have been terminated regardless of his disability, therefore removal of any negative personnel assessments would not be consistent with the evidence presented at trial or with the jury's verdict and is not appropriate. The court will decline to grant this request.

With regard to Miller's request for company-wide dissemination of the judgment in this case and other information regarding Pilgrim's Pride's anti-discrimination policies, the court finds that this request is not warranted based upon the evidence presented at trial. Miller's case was unique and not representative of global conditions existing at Pilgrim's Pride's facility in Virginia or elsewhere. Furthermore, there is no ongoing relationship between Miller and

8

Pilgrim's Pride, therefore Miller is not able to demonstrate any harm that may result to himself as a result of Pilgrim's Pride's alleged failure to implement its existing anti-discrimination policies in the future. Therefore, the court will grant injunctive relief only with regard to the requirement that the aforementioned declaration regarding Miller's discharge be included in his personnel file. The plaintiff's remaining requests will be denied.

C.      Attorney's Fees and Costs

The plaintiff has asked the court to allow him to recover the total amount of his attorney's fees as well as litigation costs and expenses incurred in this case. The ADA does allow for the recovery of attorney's fees as follows:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. Furthermore, 42 U.S.C. § 2000e-5(g)(2)(B)(i) permits a plaintiff in a mixed motive case with a same decision finding to recover attorney's fees and costs, in the court's discretion, so long as they are directly attributable to the pursuit of that claim.

A proper starting point for the determination of a reasonable attorney's fee is the calculation of a "lodestar" figure by multiplying the number of hours worked on the matter by a reasonable hourly rate of compensation. Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986). In determining whether an attorney's fee is reasonable, a court should then consider the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed

9

by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990) (internal citations omitted). If the attorney's fees are not properly documented, the court may either disallow such hours or reduce the "overall fee award by a fixed percentage or amount based upon the court's familiarity with the case, its complexity and the counsel involved." Synthon IP, Inc. v. Pfizer, Inc., 484 F. Supp. 2d 437, 444 (E.D. Va. 2007).

Furthermore, when a court exercises its statutory discretion in determining whether to award fees in a mixed motive case such as the one at bar, the court may consider: (1) "the relationship between the fees and the degree of the plaintiff's success," (2) "the reasons why injunctive relief was or was not granted, or the extent and nature of any declaratory relief," (3) "whether the public purpose served by resolving the dispute justifies the recovery of fees," and (4) whether the case evidences "a widespread or intolerable animus on the party of a defendant" or primarily illustrates "the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant." Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332, 1336 (4th Cir. 1996) (Title VII mixed motive pregnancy discrimination case).[2]

Proportionality of the award of fees to the results achieved is an important consideration,

---

[2] The defendant suggests that the factors identified in Mercer v. Duke Univ., 401 F.3d 199 (4th Cir. 2005) should apply to this case. Those factors are (1) the extent of relief obtained; (2) the significance of the legal issue upon which the plaintiff prevailed; and (3) whether the litigation served a public purpose. 401 F.3d at 204-207. That case involved a request for attorney's fees by a Title IX litigant who was awarded only nominal damages. The court permitted an award of fees given that the plaintiff had broken new ground in her action and thus advanced the rights of the general public, not simply those of the plaintiff. Id. at 206-207. Although the factors are similar to those enunciated in Sheppard, the more descriptive Sheppard factors are more appropriate in this case which is also one of mixed motive discrimination rather than a case under Title IX.

10

as demonstrated by the factors listed in Sheppard, supra, however the Supreme Court has recognized in the civil rights context that "[i]n order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." City of Riverside v. Rivera, 477 U.S. 561, 578 (1986). Likewise, in the context of the ADA, Congress has determined that a successful plaintiff, even one whose damages are limited because of a same decision finding, may be entitled to his reasonable attorney's fees. See 42 U.S.C. §§ 12205 and 2000e-5(g)(2)(B)(i). Nevertheless, the amount of damages recovered is a relevant factor and is "one of many factors that a court should consider in calculating an award of attorneys' fees." City of Riverside, 477 U.S. at 574.

Upon remand, the district court in Sheppard awarded the plaintiff attorney's fees in the amount of one half the customary 33% contingency fee based upon the defendant's reasonable $5,000.00 settlement offer made prior to trial for a total of $825.00. Sheppard v. Riverview Nursing Ctr., Inc., 948 F. Supp. 502, 503 (D. Md. 1996). In support of its award, the court noted that there was no evidence of invidious animus against either the plaintiff or any other employees, the employer was small and unsophisticated, the declaratory judgment in the case simply ratified the verdict, there was no future danger of discrimination, and the plaintiff received only nominal damages on her claim. Id.

Other courts have followed a similar approach. See, e.g., Diehm v. City of Omaha, 2006 WL 753912 (D. Neb. 2006); Snell v. Reno Hilton Resort, 930 F. Supp. 1428 (D. Nev. 1996). In Diehm, a Title VII case, the jury found that the defendant would have terminated the plaintiff regardless of its impermissible consideration of her gender as a motivating factor and also found

11

for the defendant on a second claim for rehire. 2006 WL 753912 at *1. The court stated that:

> The jury found in favor of plaintiff on one issue in this case. An award of attorney fees in this case will likely frustrate further discrimination and encourage the City to adopt and monitor acceptable employment practices. Accordingly, this court finds that Diehm is entitled to attorney fees.

Id. at *2. Because the plaintiff in Diehm was not successful on one claim and the jury found that the defendant would have made the same decision with regard to the remaining claim, the court made a fifty percent across the board reduction in the fees requested to reflect its "best judgment of the number of hours that should be deducted from the hours claimed in order to estimate the number of hours reasonably expended in these cases." Id. (quoting Tabech v. Gunter, 869 F. Supp. 1446, 1460 (D. Neb. 1994)). The final award of attorney's fees was $13,756.75, half the lodestar amount of $27,513.50. Id. at *3.

Likewise, in Snell, supra, another Title VII same decision case, the court noted that "[a] Title VII plaintiff is the 'chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority.' Congress intended that plaintiffs who have established a mixed motive recover attorney's fees. If Congress intended merely a nominal recovery, it could have expressly provided for such." Snell, 930 F. Supp. at 1431-32 (quoting Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412 (1978)). See also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 965 F. Supp 190, 199 (D. Mass. 1997) ("Indeed the 1991 Act underscored the 'private attorneys general' role to be played by individual plaintiffs: It allows them to bring actions that might stop employers from continuing unlawful employment practices, even where the specific plaintiff is not entitled to any individual recovery.") Therefore, the Snell court awarded half the lodestar amount finding that "the fifty percent approach strikes an appropriate

balance between the policy objectives embodied in 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B) and the degree of success achieved by plaintiff in this litigation." 930 F. Supp. at 1432.

This court finds the reasoning in the above cited cases to be persuasive. In Miller's case, the same decision finding on the FMLA retaliation claim precluded Miller from obtaining any relief on that claim. The billing records supplied by Miller's attorneys do not permit the court to make a reasoned determination of the time spent or costs and expenses incurred on his FMLA claims as opposed to his ADA claims. Therefore, the court finds it reasonable to deduct fifty percent (50%) of the fees and associated litigation costs and expenses from the total to take into account the plaintiff's lack of success on his FMLA claims.

With regard to Miller's ADA claim, he was able to achieve only a partial victory due to the jury's same decision finding. This case, while not ultimately proven ground breaking, did help to develop the general body of law surrounding cases involving discrimination under the FMLA and ADA. Miller's attorneys spent considerable time and effort on the case and were, in fact, able to demonstrate that Pilgrim's Pride discriminated against Miller on the basis of his disability. This success for the plaintiff resulted even though Pilgrim's Pride vigorously defended the case and failed to place any significant value on the case. Miller was ultimately able to obtain only declaratory relief on his ADA claim, however Congress has permitted the recovery of attorney's fees and costs even in such a situation of somewhat limited victory. In order to reflect the limited nature of Miller's success, the court will further discount the remaining half of the attorney's fees and costs incurred in this case by another fifty percent (50%). Permitting the plaintiff to recover approximately twenty-five percent (25%) of his actual

13

attorney's fees and costs properly balances the public policy concerns embodied in 42 U.S.C. § 2000e-5(g)(2)(B)(ii) with the nominal nature of the plaintiff's success in this case.

The court does note, however, that the $300.00 per hour fee requested by Miller's attorney Tim Cupp exceeds a reasonable hourly rate in the Western District of Virginia. Although the plaintiff has submitted two declarations in support of his fee request, see Declaration of Harris D. Butler III and Declaration of Robert Schiavoni attached to Plaintiff's Petition for Monetary Relief, Declaratory Relief, Injunctive Relief, and Attorney's Fees and Costs and Memorandum in Support, neither of those attorneys practice in this district. The court believes that a more reasonable rate, based upon its survey of cases in the Western District of Virginia, is $250.00 per hour. Therefore, the court will use that figure in determining the proper award.[3] The court notes that the $125.00 per hour requested for Jenifer Cupp appears reasonable. The court will, however, discount the copying charges listed in the Itemization of Litigation Expenses and Costs, see Exhibit 3 to Plaintiff's Petition, from $.20 per page to $.10 per page to reflect a more reasonable rate in this market.

The defendant has objected to an award of attorney's fees to include those incurred in pursuit of various so-called conspiracy theories including the Brandy Barb situation, the West Virginia "conspiracy" and the Georgia "conspiracy." The court notes that travel to Georgia was necessary for Miller's attorney as the defendant itself had noticed several depositions there. Furthermore, the court finds that the investigation of claims and issues in West Virginia and

---

[3] Although the court did calculate sanctions against the defendant based upon an hourly rate of $300.00, that calculation was not meant to compensate Miller for his attorney's fees. It was merely a determination of a proper sanction against Pilgrim's Pride and was not an approval of the hourly rate for purposes of this petition for fees.

14

Georgia was proper and integral to the prosecution of Miller's case. Hours incurred for those matters will not be excluded. With regard to Brandy Barb, however, the court agrees that the plaintiff's investigation into the matters surrounding her background did not elicit information relevant to the prosecution of his case. The court will reduce the total number of hours by the total expended on matters related to Ms. Barb.

After taking into account the various adjustments listed herein, the court determines that a reasonable attorney's fee in this case is $72,873.44[4] and that reasonable litigation expenses and costs are $4,287.32[5] for a total of $77,160.76.

## CONCLUSION

For the reasons stated herein, the plaintiff's petition is granted in part and denied in part. The court will deny plaintiff's petition with regard to his FMLA claims. With regard to Miller's ADA claim, the court will grant declaratory relief and order that a declaration that Pilgrim's Pride terminated Miller based upon his disability in violation of the ADA be placed in Miller's personnel file. The court will also order an award of attorney's fees and costs in the amount of $77,160.76. Plaintiff's request for injunctive relief shall be denied.

The Clerk of Court is directed to send a certified copy of the Memorandum Opinion as well as the accompanying Final Order to all counsel of record.

ENTER: This 31st day of August, 2007.

_____
United States District Judge

---

[4] Total Tim Cupp Hours of 1,214.10 less 143.6 hours for Barb (including 1.25 specific to FMLA) times hourly rate of $250 times 25% = $66,906.25. See Exhibit 1 to Plaintiff's Petition. Total Jenifer Cupp hours of 190.95 times hourly rate of $125 times 25% = $5,967.19. See Exhibit 2 to Plaintiff's Petition.

[5] Total litigation costs of $18,253.49 less $1,104.20 (copies at $.10 per page) times 25% = $4,287.32. See Exhibit 3 to Plaintiff's Petition.

15

Case 5:05-cv-00064-GEC-BWC Document 311 Filed 08/31/07 Page 15 of 15 Pageid#: 4460